**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CARLOS ROMAN,** | : | |
| **Plaintiff** | : | |
| | : | **CIVIL ACTION NO. 3:13-1053** |
| **v.** | : | **(JUDGE MANNION)** |
| **RONALD LONG, et al.,** | : | |
| **Defendants** | : | |

**MEMORANDUM**

## I. Background

Plaintiff, an inmate formerly confined in the Smithfield State Correctional Institution ("SCI-Smithfield"), Huntingdon, Pennsylvania[1], filed this civil rights action pursuant to 42 U.S.C. §1983. (Doc. No. 1, complaint). Plaintiff alleges that on September 7, 2012, while he was participating in a voluntary hunger-strike, he was forcibly provided with nutrition through a nasogastric tube by the Defendants, though no court order authorizing that action had been obtained. Id. Plaintiff names as Defendants, SCI-Smithfield Medical Director Ronald Long, and the following SCI-Smithfield employees: Nurse Alexa Lindwell, Health Care

---

[1]Subsequent to the filing of the above captioned action, Roman was released from custody and currently resides at 171 Sheridan Avenue, Brooklyn, New York. (See Doc. No. 8, Notice of Address Change).

Administrator Dreibelbis, Superintendent John Fisher, Correctional Officer Lieutenant Heaster, Physicians Assistant John Doe # 1, and Correctional Officers John Doe #2, #3, and #4. Id.

On July 12, 2013, Defendant Long filed a motion to dismiss Plaintiff's complaint, along with a brief in support. ((Doc. Nos. 13, 14). Plaintiff failed to file a brief in opposition to the motion in accordance with the Local Rules of Court. L.R. 7.6.[2] On November 1, 2013, this Court issued an Order, affording Plaintiff the opportunity to file an opposition brief by November 20, 2013, and cautioned him that his failure to file a brief would result in the motion being deemed unopposed and granted without an analysis of the merits of the claim against Defendant Long. ((Doc. No. 16, citing L.R. 7.6.). Plaintiff failed to file a brief as directed.

On February 10, 2014, remaining Defendants filed a motion for summary judgment, along with a statement of material facts and supporting brief and exhibits, arguing entitlement to judgment for Plaintiff's failure to exhaust administrative remedies prior to filing his civil action. ((Doc. Nos. 19-22). Plaintiff

---

[2]By Order dated April 24, 2013, this Court directed the parties' attention to the Local Rules of Court. (See Doc. No. 4). The Order referred specifically to an opposing party's duty to file a brief in opposition to a motion within fourteen (14) days after service of the movant's brief. See M.D. Pa. Local Rule 7.6.

failed to file a brief in opposition to the motion in accordance with the Local Rules of Court. L.R. 7.6. On March 3, 2014, this Court issued an Order, affording Plaintiff the opportunity to file an opposition brief by March 17, 2014, and cautioned him that his failure to file a brief would result in dismissal of the action pursuant to Rule 41(b) of the Federal Rules of Civil Procedure. (Doc. No. 23). Plaintiff failed to file a brief as directed. For the reasons set forth below, the matter will be dismissed for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

## II.  Discussion

Under the Local Rules of this Court, the Plaintiff should be deemed to concur in Defendants' motions since he has failed to timely oppose the motions, or otherwise litigate this case. This procedural default completely frustrates and impedes efforts to resolve this matter in a timely and fair fashion, and under the Rules of this Court warrants dismissal of the action, since Local Rule 7.6 of the Rules of this Court imposes an affirmative duty on the plaintiff to respond to motions and provides that:

> Any party opposing any motion, other than a motion for summary judgment, shall file a brief in opposition within

> fourteen (14) days after service of the movant's brief, or, if a brief in support of the motion is not required under these rules, within seven (7) days after service of the motion. **Any party who fails to comply with this rule shall be deemed not to oppose such motion.** Nothing in this rule shall be construed to limit the authority of the court to grant any motion before expiration of the prescribed period for filing a brief in opposition. A brief in opposition to a motion for summary judgment and LR 56.1 responsive statement, together with any transcripts, affidavits or other relevant documentation, shall be filed within twenty-one (21) days after service of the movant's brief.

Local Rule 7.6 (emphasis added).

It is now well-settled that "Local Rule 7.6 can be applied to grant a dispositive motion without analysis of the complaint's sufficiency 'if a party fails to comply with the [R]ule after a specific direction to comply from the court.' Stackhouse v. Mazurkiewicz, 951 F.2d 29, 30 (1991)." Williams v. Lebanon Farms Disposal, Inc., No. 09–1704, 2010 WL 3703808, *1 (M.D. Pa. Aug .26, 2010). In this case the Plaintiff has not complied with the Local Rules, or this Court's orders, by filing a timely response to Defendants' motions. Therefore, these procedural defaults by the Plaintiff compel the Court to consider:

> [A] basic truth: we must remain mindful of the fact that "the Federal Rules are meant to be applied in such a way as to promote justice. See Fed.R.Civ.P. 1. Often that will mean that courts should strive to resolve cases on their merits whenever possible. However, justice also requires that the merits of a

> particular dispute be placed before the court in a timely
> fashion...." McCurdy v. American Bd. of Plastic Surgery, 157
> F.3d 191, 197 (3d Cir.1998).

Lease v. Fishel, 712 F.Supp.2d 359, 371 (M.D. Pa.2010).

With this basic truth in mind, we acknowledge a fundamental guiding tenet of our legal system. A failure on our part to enforce compliance with the rules, and impose the sanctions mandated by those rules when the rules are breached, "would actually violate the dual mandate which guides this Court and motivates our system of justice: 'that courts should strive to resolve cases on their merits whenever possible [but that] justice also requires that the merits of a particular dispute be placed before the court in a timely fashion'." Id. Therefore, we are obliged to ensure that one party's refusal to comply with the rules does not lead to an unjustified prejudice to those parties who follow the rules.

These basic tenets of fairness apply here. In this case, the Plaintiff has failed to comply with Local Rule 7.6 by filing a timely response to Defendants' motion to dismiss and motion for summary judgment. This failure now compels us to apply the sanction called for under Rule 7.6 and deem the Plaintiff to not oppose these dispositive motions.

Federal Rule of Civil Procedure 41(b) permits a District Court to dismiss a plaintiff's case for failure to prosecute. See Fed.R.Civ.P. 41(b) ("If the plaintiff

fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it."). In so doing, the court must balance the following factors: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense." Poulis v. State Farm Fire and Casualty Co., 747 F.2d 863, 868 (3d Cir. 1984.)

In exercising this discretion "there is no 'magic formula' that we apply to determine whether a district court has abused its discretion in dismissing for failure to prosecute." Lopez v. Cousins, 435 F. App'x 113, 116 (3d Cir.2011) (quoting Briscoe v. Klem, 538 F.3d 252 (3d Cir.2008)) Therefore, "[i]n balancing the Poulis factors, [courts] do not [employ] a ... 'mechanical calculation' to determine whether a district court abused its discretion in dismissing a plaintiff's case. Mindek v. Rigatti, 964 F.2d 1369, 1373 (3d Cir.1992)." Briscoe v. Klaus, 538 F.3d at 263. Consistent with this view, it is well-settled that " 'no single Poulis factor is dispositive,' Ware, 322 F.3d at 222, [and it is] clear that 'not all of the Poulis factors need be satisfied in order to dismiss a complaint .' Mindek, 964

F.2d at 1373." Briscoe v. Klaus, 538 F.3d at 263. Moreover, recognizing the broad discretion conferred upon the district court in making judgments weighing these six factors, the court of appeals has frequently sustained such dismissal orders where there has been a pattern of dilatory conduct by a pro se litigant who is not amenable to any lesser sanction. See, e.g., Emerson v. Thiel College, 296 F.3d 184, 190 (3d Cir.2002); Tillio v. Mendelsohn, 256 F. App'x 509 (3d Cir.2007); Reshard v. Lankenau Hospital, 256 F. App'x 506 (3d Cir.2007); Azubuko v. Bell National Organization, 243 F. App'x 728 (3d Cir.2007).

**A.**     **Analysis of the Poulis Factors**

      1.     *The extent of the party's personal responsibility.*

A pro se plaintiff is responsible for his failure to comply with a court's orders. Emerson, 296 F.3d at 191. Without question, the delays in this case are entirely attributable to the Plaintiff, who has failed to abide by court orders, and has otherwise neglected to litigate this case, or respond to defense motions. On two separate occasions Plaintiff was directed to file a response to Defendants' motions, and failed to do so. At this point, the Court has been waiting for more than three months for Plaintiff to move the litigation forward with respect to one of the Defendant's dispositive motions, and can only conclude that he is personally responsible for failing to comply with Court orders.

2. <u>The prejudice to the adversary</u>.

The prejudice suffered by the party seeking sanctions is entitled to great weight and careful consideration. As the United States Court of Appeals for the Third Circuit has observed:

> "Evidence of prejudice to an adversary would bear substantial weight in support of a dismissal or default judgment." Adams v. Trustees of N.J. Brewery Employees' Pension Trust Fund, 29 F.3d 863, 873–74 (3d Cir.1994) (internal quotation marks and citation omitted). Generally, prejudice includes "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party." Id. at 874 (internal quotation marks and citations omitted).... However, prejudice is not limited to "irremediable" or "irreparable" harm. Id.; see also Ware v. Rodale Press, Inc., 322 F.3d 218, 222 (3d Cir.2003); Curtis T. Bedwell & Sons, Inc. v. Int'l Fidelity Ins. Co., 843 F.2d 683, 693–94 (3d Cir.1988). It also includes "the burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy." Ware, 322 F.3d at 222.

Briscoe v. Klaus, 538 F.3d at 259–60.

In this case, the Plaintiff's failure to litigate this case or comply with Court orders now wholly frustrates and delays the resolution of this action. In such instances, the Defendants are plainly prejudiced by the Plaintiff's continual inaction, and dismissal of the case clearly rests in the discretion of the trial judge. Tillio v. Mendelsohn, 256 F. App'x 509 (3d Cir.2007) (failure to timely serve

8

pleadings compels dismissal); Reshard v. Lankenau Hospital, 256 F. App'x 506 (3d Cir.2007) (failure to comply with discovery compels dismissal); Azubuko v. Bell National Organization, 243 F. App'x 728 (3d Cir.2007) (failure to file amended complaint prejudices defense and compels dismissal).

        3.    A history of dilatoriness.

        When one considers this third Poulis factor, the history of dilatoriness on the Plaintiff's part, it becomes clear that dismissal of this action is now appropriate. In this regard, it is clear that " '[e]xtensive or repeated delay or delinquency constitutes a history of dilatoriness, such as consistent non-response ... or consistent tardiness in complying with court orders.' Adams, 29 F.3d at 874." Briscoe v. Klaus, 538 F.3d at 260–61 (some citations omitted). Here, the Plaintiff has allegedly failed to exhaust his administrative remedies before filing this lawsuit and now has failed to respond to a defense motion which highlights this earlier procedural failure. The Plaintiff has also failed to timely file pleadings, and has not complied with orders of the court. Thus, the Plaintiff's conduct displays "[e]xtensive or repeated delay or delinquency [and conduct which] constitutes a history of dilatoriness, such as consistent non-response ... or consistent tardiness in complying with court orders." Adams, 29 F.3d at 874.

        4.    Was the conduct willful or in bad faith?

Under this factor, the District Court must assess whether this conduct reflects mere inadvertence or willful conduct, in that it involved "strategic," "intentional or self-serving behavior," and not mere negligence. Adams v. Trs. of N.J. Brewery Emps.' Pension Trust Fund, 29 F.3d 863, 875 (3d Cir.1994). At this juncture, when the Plaintiff has failed to comply with instructions of the Court directing the Plaintiff to take specific actions in this case, and has violated the Local Rules, the court is compelled to conclude that the Plaintiff's actions are not accidental or inadvertent but instead reflect an intentional disregard for this case and the Court's instructions.

5.    Effectiveness of sanctions other than dismissal.

Cases construing Poulis agree that in a situation such as this case, where we are confronted by a *pro se* litigant who will not comply with the rules or court orders, lesser sanctions may not be an effective alternative. See, e.g., Briscoe v. Klaus, 538 F.3d 252, 262–63 (3d Cir.2008); Emerson, 296 F.3d at 191. This case presents such a situation where the Plaintiff's status as a *pro se* litigant severely limits the ability of the court to utilize other lesser sanctions to ensure that this litigation progresses in an orderly fashion. In any event, by entering our prior orders, and counseling the Plaintiff on his obligations in this case, we have endeavored to use lesser sanctions, but to no avail. The Plaintiff

10

still declines to obey Court orders, and otherwise ignores his responsibilities as a litigant. Since lesser sanctions have been tried, and have failed, only the sanction of dismissal remains available to the Court

      6.   Meritoriousness of the claim

Finally, under Poulis we are cautioned to consider one other factor, the meritoriousness of the Plaintiff's claims. In our view, however, consideration of this factor cannot save this particular Plaintiff's claims, since the Plaintiff is now wholly non-compliant with his obligations as a litigant. The Plaintiff cannot refuse to address the merits of his claims, and then assert the untested merits of these claims as grounds for denying a motion to sanction him. Furthermore, it is well-settled that " 'no single Poulis factor is dispositive,' Ware, 322 F.3d at 222, [and it is] clear that 'not all of the Poulis factors need be satisfied in order to dismiss a complaint.' Mindek, 964 F.2d at 1373." Briscoe v. Klaus, 538 F.3d at 263. Therefore, the untested merits of the noncompliant Plaintiff's claims, standing alone, cannot prevent imposition of sanctions.

In any event, as discussed below, Plaintiff's claims clearly fail on their merits, yet another factor which favors dismissal of this action.

In this case the Plaintiff's failure to timely pursue his available administrative remedies, which is undisputed on the record, has substantive

11

significance for the Plaintiff, since the Prison Litigation Reform Act provides that "[n]o action shall be brought with respect to prison conditions under ... [42 U.S.C. §1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). Section 1997e's "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532(2002); Booth v. Churner, 206 F.3d 289 (3d Cir.2000). While this exhaustion requirement is not a jurisdictional bar to litigation, this requirement is strictly enforced by the courts. This rigorous enforcement is mandated by a fundamental recognition that §1997e's exhaustion requirement promotes important public policies. As the United States Court of Appeals for the Third Circuit has noted:

> Courts have recognized myriad policy considerations in favor of exhaustion requirements. They include (1) avoiding premature interruption of the administrative process and giving the agency a chance to discover and correct its own errors; (2) conserving scarce judicial resources, since the complaining party may be successful in vindicating his rights in the administrative process and the courts may never have to intervene; and (3) improving the efficacy of the administrative process. Each of these policies, which Congress seems to have had in mind in enacting the PLRA, is advanced by the across-the-board, mandatory exhaustion requirement in

§1997e(a).... [A] a comprehensive exhaustion requirement better serves the policy of granting an agency the "opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." Moreover, "even if the complaining prisoner seeks only money damages, the prisoner may be successful in having the [prison] halt the infringing practice" or fashion some other remedy, such as returning personal property, reforming personal property policies, firing an abusive prison guard, or creating a better screening process for hiring such guards. And when a prisoner obtains some measure of affirmative relief, he may elect not to pursue his claim for damages. In either case, local actors are given the chance to address local problems, and at the very least, the time frame for the prisoner's damages is frozen or the isolated acts of abuse are prevented from recurring. An across-the-board exhaustion requirement also promotes judicial efficiency.... Moreover, even if only a small percentage of cases settle, the federal courts are saved the time normally spent hearing such actions and multiple appeals thereto.... In cases in which inmate-plaintiffs exhaust their remedies in the administrative process and continue to pursue their claims in federal court, there is still much to be gained. The administrative process can serve to create a record for subsequent proceedings, it can be used to help focus and clarify poorly pled or confusing claims, and it forces the prison to justify or explain its internal procedures. All of these functions help courts navigate the sea of prisoner litigation in a manner that affords a fair hearing to all claims.

Nyhuis v. Reno, 204 F.3d 65, 75–76 (3d Cir.2000) (citations omitted). Because of the important policies fostered by this exhaustion requirement, it has been held that there is no futility exception to §1997e's exhaustion requirement. Id. Instead, courts have typically required across-the-board administrative

exhaustion by inmate plaintiffs who seek to pursue claims in federal court.

Moreover, courts have also imposed a procedural default component on this exhaustion requirement, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding into federal court. Spruill v. Gillis, 372 F.3d 218 (3d Cir.2004). Applying this procedural default standard to §1997e's exhaustion requirement, courts have concluded that inmates who fail to fully, or timely, complete the prison grievance process are barred from subsequently litigating claims in federal court. See, e.g., Booth v. Churner, 206 F.3d 289 (3d Cir.2000); Bolla v. Strickland, 304 F. App'x 22 (3d Cir.2008); Jetter v. Beard, 183 F. App'x 178 (3d Cir.2006).

This broad rule favoring full exhaustion admits of one, narrowly defined exception. If the actions of prison officials directly caused the inmate's procedural default on a grievance, the inmate will not be held to strict compliance with this exhaustion requirement. See Camp v. Brennan, 219 F.3d 279 (3d Cir.2000). However, case law recognizes a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires." Davis v. Warman, 49 F. App'x 365, 368 (3d Cir.2002). Thus, an inmate's failure to exhaust will only be excused "under certain limited circumstances", Harris v. Armstrong, 149 F. App'x 58, 59 (3d Cir.2005), and an inmate can defeat a claim

14

of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." Davis v. Warman, supra, 49 F. App'x at 368. See also Brown v. Croak, 312 F.3d 109, 110 (3d Cir.2002) (assuming that prisoner with failure to protect claim is entitled to rely on instruction by prison officials to wait for outcome of internal security investigation before filing grievance); Camp v. Brennan, 219 F.3d 279, 281 (3d Cir.2000) (exhaustion requirement met where Office of Professional Responsibility fully examined merits of excessive force claim and uncontradicted correctional officers impeded filing of grievance).

However, in the absence of competent proof that an inmate was misled by corrections officials, or some other extraordinary circumstances, inmate requests to excuse a failure to exhaust are frequently rebuffed by the courts. Thus, an inmate cannot excuse a failure to timely comply with these grievance procedures by simply claiming that his efforts constituted "substantial compliance" with this statutory exhaustion requirement. Harris v. Armstrong, 149 F. App'x 58, 59 (3d Cir.2005). Nor can an inmate avoid this exhaustion requirement by merely alleging that the Department of Corrections policies were not clearly explained to him. Davis v. Warman, 49 F. App'x 365, 368 (3d Cir.2002). Furthermore, an inmate's confusion regarding these grievances

15

procedures does not, standing alone, excuse a failure to exhaust. Casey v. Smith, 71 F. App'x 916 (3d Cir.2003). Moreover, an inmate cannot cite to alleged staff impediments to grieving a matter as grounds for excusing a failure to exhaust, if it also appears that the prisoner did not pursue a proper grievance once those impediments were removed. Oliver v. Moore, 145 F. App'x 731 (3d Cir.2005) (failure to exhaust not excused if, after staff allegedly ceased efforts to impede grievance, prisoner failed to follow through on grievance).

Thus, in this setting, the Prison Litigation Reform Act requires that an inmate fully exhaust his administrative remedies before proceeding into federal court, an administrative exhaustion requirement which entails full compliance with grievance procedures and timeliness.

Judged against these benchmarks, Plaintiff's complaint fails since the Defendants have demonstrated, without contradiction by the Plaintiff, that none of the matters set forth in the complaint have been fully and properly exhausted within the prison grievance system. Specifically, the Final Appeal Decision from the Secretary's Office of Inmate Grievances and Appeals notes that Plaintiff's grievance appeal was being dismissed at the final level because it exceeded two pages in length, as outlined in DC-ADM 804. (See Doc. No. 22-3 at 11, Final Appeal Decision). As such, Plaintiff failed to follow all established procedures to

satisfactorily exhaust his administrative remedies prior to filing this suit. This failure to exhaust is fatal to his case, and compels dismissal of the action.

Moreover, because we find it beyond dispute that Plaintiff failed to exhaust his remedies, we find it unnecessary to consider Defendant Long's argument that as the SCI-Smithfield Medical Director, he had no personal involvement in the constitutional violations alleged in this action. Additionally, because we find based on the record submitted, that Plaintiff has procedurally defaulted on his administrative grievance, and, therefore, did not and cannot fully exhaust his remedies, any further leave to amend the complaint would be futile and will not be permitted.[3]

## B.    Balancing of the Poulis Factors

In balancing the Poulis factors, no single factor is dispositive, Ware, 322 F.3d at 222, and not all of the factors need be satisfied in order to dismiss a complaint. Mindek v. Rigatti, 964 F.2d 1369, 1373 (3d Cir. 1992). It is clear that,

---

[3] We recognize that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, See Fletcher–Hardee Corp. v. Pote Concrete Contractors, 482 F.3d 247, 253 (3d Cir.2007). However, it is unnecessary to permit further amendment when granting further leave to amend would be futile or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir.2004).

following a full analysis of the factors, the majority of the six factors weigh heavily

in favor of defendants and dismissal of the action for failure to prosecute.

An appropriate order will issue.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

Dated: March 28, 2014
O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2013 MEMORANDA\13-1053-01.wpd

18